STATE v. TRUSELL

[170 N.C. App. 33 (2005)]

STATE OF NORTH CAROLINA v. WILLIAM VAN TRUSELL

No. COA04-704

(Filed 3 May 2005)

**1. Indictment and Information— amendment—no substantial alteration of charge—attempted robbery with dangerous weapon to robbery with dangerous weapon**

The trial court did not err by amending an indictment for attempted robbery with a dangerous weapon (ARDW) to robbery with a dangerous weapon (RDW), because: (1) both crimes are governed by N.C.G.S. § 14-87(a); (2) our Court of Appeals and Supreme Court have found the elements of ARDW to be the same as RDW; (3) the indictment sufficiently apprised defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution for the same offense since a showing of a taking is not a necessary element of the crime of RDW; (4) an amendment to the indictment did not deprive the court of knowledge as to the judgment to pronounce in the event of conviction since the classifications and punishments of the crimes of ARDW and RDW are identical; and (5) the indictment did not substantially alter the charge.

**2. Criminal Law— sua sponte entering of prayer for judgment continued—no conditions imposed on defendant**

The trial court did not abuse its discretion in an armed robbery case by sua sponte entering a prayer for judgment continued (PJC) as to one charge of robbery with a dangerous weapon and as to the charge of assault with a deadly weapon, because: (1) our Supreme Court has affirmed that North Carolina courts have the power to continue prayer for judgment without defendant's consent so long as no conditions are imposed upon defendant; and (2) the trial court did not impose any conditions on defendant when it entered the PJC, and defendant did not object to entry of PJC.

**3. Criminal Law— prayer for judgment—no presumption of judicial or prosecutorial vindictiveness**

The trial court did not err by granting the State's prayer for judgment for a second charge of robbery with a dangerous weapon after defendant's appeal of his conviction of first-degree

STATE v. TRUSELL

[170 N.C. App. 33 (2005)]

kidnapping and subsequent resentencing to a lesser sentence for second-degree kidnapping, because: (1) there is no presumption of vindictiveness when a trial court sentences on a prayer for judgment continued following appeal of a separate conviction; and (2) defendant failed to demonstrate actual vindictiveness even though the record indicated some spurious motivation on the part of the prosecutor to correct his own error in sending the wrong appellate record for review to the Court of Appeals since the trial court articulated a legitimate reason for sentencing defendant on the robbery with a dangerous weapon charge.

Appeal by defendant from judgment entered 10 May 2001 by Judge J. B. Allen, Jr. in Lee County Superior Court. Heard in the Court of Appeals 27 January 2005.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General William P. Hart and Assistant Attorney General Karen A. Blum, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Barbara S. Blackman, for defendant-appellant.*

HUNTER, Judge.

William Van Trusell ("defendant") appeals from a judgment entered consistent with a jury verdict for armed robbery on the basis that the trial court: (1) erred in amending an indictment from attempted robbery with a dangerous weapon to robbery with a dangerous weapon; (2) abused its discretion in *sua sponte* entering a prayer for judgment continued; and (3) erred in granting the State's prayer for judgment. We conclude there was no error in defendant's trial, prayer for judgment continued, or sentencing on the motion praying judgment.

The evidence tends to show that on the evening of 27 December 1996, several individuals were gathered at the apartment of Joyce Williams ("Williams"), including Darius Lucas ("Lucas") and Jimmy McLean ("McLean"). During the course of the evening, defendant came to Williams' apartment, inquiring as to the whereabouts of a Walter Bethea ("Bethea"). Defendant left, but returned in the early morning hours of 28 December 1996 with Clifton Martin ("Martin").

Upon his return, defendant confronted the group at the apartment, demanding to know the whereabouts of a sum of money and of

**STATE v. TRUSELL**

[170 N.C. App. 33 (2005)]

Bethea. When told Bethea was not there, defendant and Martin drew guns and told everyone to empty their pockets. Although McLean originally told police defendant took nothing, he testified at trial that defendant took six or seven dollars from him. Lucas testified that Martin took a pager and thirty dollars. Defendant led McLean through the apartment at gunpoint, and threatened to kill McLean if he did not tell defendant Bethea's whereabouts. McLean suggested Bethea might be at the neighboring apartment of Lorenzo Armstrong ("Armstrong"). Defendant and McLean then left Williams' and went to Armstrong's apartment. Armstrong told defendant that Bethea was no longer there, and McLean ran from the apartment. Defendant fired seven bullets, but did not hit McLean.

The record shows that defendant was indicted on 3 February 1997 for robbery with a dangerous weapon of Lucas, attempted robbery with a dangerous weapon of McLean, first degree kidnapping, and assault with a deadly weapon. The case came to trial on 28 April 1997. At the close of the State's evidence, the district attorney made a motion to amend the indictment to conform to the evidence presented at trial, amending "attempted robbery with a dangerous weapon" for the robbery of McLean to "robbery with a dangerous weapon." This motion was granted.

On 30 April 1997, the jury returned verdicts of guilty as to both charges of robbery with a dangerous weapon, first degree kidnapping, and assault with a deadly weapon. For the charge of robbery with a dangerous weapon of Lucas, defendant was sentenced to 77 to 102 months imprisonment. For the charge of first degree kidnapping, defendant was sentenced to 100 to 129 months, plus a sixty to eighty-one month firearm enhancement to begin at the expiration of the 100 to 129 month sentence. The trial court *sua sponte* continued judgment on the second charge of robbery with a dangerous weapon of McLean and assault with a deadly weapon.

Defendant appealed his convictions of first degree kidnapping and robbery with a dangerous weapon of Lucas. In *State v. Trusell*, 351 N.C. 347, 524 S.E.2d 804 (2000), the North Carolina Supreme Court reversed this Court's decision, 133 N.C. App. 446, 525 S.E.2d 243 (1999), finding that the trial court committed plain error in instructing the jury on a different theory than that stated in the indictment for first degree kidnapping. Defendant's case was remanded for resentencing for second degree kidnapping.

On 14 April 2000, defendant was resentenced to 89 to 116 months for second degree kidnapping, including a sixty month firearm enhancement. Defendant appealed the sentence in *State v. Trusell*, 144 N.C. App. 445, 548 S.E.2d 560 (2001), and this Court affirmed the sentence.

On 3 May 2001, the State filed a Motion Praying Judgment for the robbery with a dangerous weapon of McLean. On 10 May 2001, defendant was sentenced to sixty-nine to ninety-two months for the charge of robbery with a dangerous weapon, with sentence to begin at the expiration of all sentences being served by defendant. Defendant was granted a writ of certiorari, filed with this Court 8 January 2004, as to the conviction and sentencing for the robbery with a dangerous weapon of McLean.

I.

[1] Defendant first contends the trial court erred in amending the indictment for attempted robbery with a dangerous weapon to robbery with a dangerous weapon. We disagree.

N.C. Gen. Stat. § 15A-923(e) (2003) states that "[a] bill of indictment may not be amended." Our Supreme Court has interpreted this statute to mean "only that an indictment may not be amended in a way which 'would substantially alter the charge set forth in the indictment.' " *State v. Brinson*, 337 N.C. 764, 767, 448 S.E.2d 822, 824 (1994) (citations omitted). An indictment has been held to be constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense, to protect him from subsequent prosecution for the same offense, and to enable the court to know what judgment to pronounce in the event of conviction. *See State v. Snyder*, 343 N.C. 61, 65-66, 468 S.E.2d 221, 224 (1996). Defendant contends amendment of the indictment from attempted robbery with a dangerous weapon to robbery with a dangerous weapon is a substantial alteration.

The crimes of both attempted robbery with a dangerous weapon and robbery with a dangerous weapon are governed by N.C. Gen. Stat. § 14-87(a) (2003):

Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence

**STATE v. TRUSELL**

[170 N.C. App. 33 (2005)]

or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

*Id.* Our courts have held that the essential elements of the crime of robbery with a dangerous weapon are: "(1) the unlawful taking *or attempted taking* of personal property from another; (2) the possession, use or threatened use of 'firearms or other dangerous weapon, implement or means'; and (3) danger or threat to the life of the victim." *State v. Joyner,* 295 N.C. 55, 63, 243 S.E.2d 367, 373 (1978) (emphasis added). The essential elements of the crime of attempted robbery with a dangerous weapon are:

"(1) the unlawful *attempted taking* of personal property from another;

(2) the possession, use or threatened use of a firearm or other dangerous weapon, implement or means; and

(3) danger or threat to the life of the victim."

*State v. Rowland,* 89 N.C. App. 372, 376, 366 S.E.2d 550, 552 (1988) (emphasis added) (citation omitted). Further, our Supreme Court has held that "[a]n attempt to take money or other personal property from another under the circumstances delineated by G.S. 14-87 constitutes, by the terms of that statute, an *accomplished* offense, and is punishable to the same extent as if there was an actual taking." *State v. Spratt,* 265 N.C. 524, 525, 144 S.E.2d 569, 571 (1965). Thus, our Courts have found the elements of attempted robbery with a dangerous weapon to be the same as robbery with a dangerous weapon.

As a showing of a taking is not a necessary element of the crime of robbery with a dangerous weapon, an indictment amended from attempted robbery with a dangerous weapon to robbery with a dangerous weapon sufficiently apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense, and to protect him from subsequent prosecution for the same offense. Further, as the classifications and punishments of the crimes of attempted robbery with a dangerous weapon and robbery with a dangerous weapon are identical, such an amendment to an indictment does not deprive the court of knowledge as to the judgment to pronounce in the event of conviction. Therefore, as the indictment did not substantially alter the charge, we find that the

trial court did not err in amending the indictment for robbery with a dangerous weapon.

## II.

**[2]** Defendant next contends the trial court abused its discretion in *sua sponte* entering a prayer for judgment continued. Defendant argues that such a practice is archaic and a violation of defendant's rights under numerous provisions of both the United States and North Carolina Constitutions, and as such, constitutes an abuse of discretion. We disagree.

Our Supreme Court has affirmed that North Carolina courts have the power to continue prayer for judgment without the defendant's consent, so long as no conditions are imposed upon the defendant. *See State v. Griffin*, 246 N.C. 680, 682, 100 S.E.2d 49, 51 (1957). This Court is bound by prior decisions of our Supreme Court. *See Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993).

Here, the trial court entered a prayer for judgment continued as to one charge of robbery with a dangerous weapon and as to the charge of assault with a deadly weapon. The trial court imposed no conditions on defendant in entering the prayer for judgment continued. Further, we note defendant did not object to entry of the prayer for judgment continued. As determined by our Supreme Court, such an action by the trial court does not constitute an abuse of discretion. *See Griffin*, 246 N.C. at 682, 100 S.E.2d at 51. Therefore, this assignment of error is without merit.

## III.

**[3]** Defendant finally contends the trial court erred in granting the State's prayer for judgment, as such entry of judgment penalized defendant for exercising his right of appeal and constituted both judicial and prosecutorial vindictiveness. We disagree.

Our courts have not yet addressed the question of when a motion praying judgment may constitute judicial or prosecutorial vindictiveness which violates a defendant's rights to due process.

We therefore briefly review the jurisprudence of the United States Supreme Court with regard to these issues.

In *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656 (1969), the United States Supreme Court established that:

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction

must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

*Id.* at 725, 23 L. Ed. 2d at 669 (footnote omitted). As a result, the Court established a prophylactic rule, creating a rebuttable presumption of vindictiveness when a judge imposed a more severe sentence upon a defendant after a new trial. *Id.* at 726, 23 L. Ed. 2d at 670.

Following *Pearce,* the United States Supreme Court also addressed the context of prosecutorial vindictiveness in *Blackledge v. Perry,* 417 U.S. 21, 40 L. Ed. 2d 628 (1974), and similarly concluded that a rebuttable presumption of vindictiveness on the part of the prosecutor existed when a more serious charge was substituted for the original charge from which the defendant had appealed and received a trial *de novo. Id.* at 28-29, 40 L. Ed. 2d at 634-35.

The holdings in the *Pearce* line of progeny, however, have been severely limited in subsequent jurisprudence of the Supreme Court. In *Alabama v. Smith,* 490 U.S. 794, 104 L. Ed. 2d 865 (1989), the Court noted that, "[w]hile the Pearce opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness 'do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial.'" *Smith,* 490 U.S. at 799, 104 L. Ed. 2d at 872 (quoting *Texas v. McCullough,* 475 U.S. 134, 138, 89 L. Ed. 2d 104, 110 (1986)). As recognized in *Chaffin v. Stynchcombe,* 412 U.S. 17, 36 L. Ed. 2d 714 (1973), the *Pearce* presumption was not designed to prevent imposition of an increased sentence on retrial "for some valid reason associated with the need for flexibility and discretion in the sentencing process," but rather was "premised on the apparent need to guard against *vindictiveness* in the resentencing process." *Id.* at 25, 36 L. Ed. 2d at 723. As a result, in *Smith,* the United States Supreme Court held that the *Pearce* presumption is limited to circumstances where there is a " 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness[.]" *Smith,* 490 U.S. at 799, 104 L. Ed. 2d at 873 (citations omitted). Further, in *United States v. Goodwin,* 457 U.S. 368,

73 L. Ed. 2d 74 (1982), the Court held that such a presumption of vindictiveness is warranted only when applicable in all cases. *See Goodwin*, 457 U.S. at 381, 73 L. Ed. 2d at 85.

In *Pearce*, the Court found a presumption necessary. The Court stated that it would be " 'unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice' " as to whether to pursue an appeal, because of the possibility a retaliatory motive would lead to an increased sentence on the conviction if a new trial was received. *Pearce*, 395 U.S. at 724, 23 L. Ed. 2d at 669 (citations omitted). Likewise, in *Blackledge*, the Court noted that a prosecutor had a considerable stake in discouraging appeals to obtain a trial *de novo*, because of the increased expenditure of resources before a conviction became final and the possible result of a defendant going free. *Blackledge*, 417 U.S. at 27, 40 L. Ed. 2d at 634. As a result, the Court concluded the "opportunities for vindictiveness in this situation are such as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case." *Id.*

In *Smith*, however, the United States Supreme Court found a presumption inappropriate "when a greater penalty is imposed after trial than was imposed after a prior guilty plea, [as] the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge." *Smith*, 490 U.S. at 801, 104 L. Ed. 2d at 873-74. The Court noted that "in the course of proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged[,]" and that "after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Smith*, 490 U.S. at 801, 104 L. Ed. 2d at 874. As a result, the Court found those factors distinguished *Smith* from cases such as *Pearce* and *Blackledge*, and found there were enough "justifications for a heavier second sentence that it cannot be said to be more likely than not that a judge who imposes one is motivated by vindictiveness." *Smith*, 490 U.S. at 802, 104 L. Ed. 2d at 874.

In light of this precedent, we therefore examine the instant case to determine whether a presumption of vindictiveness would be proper, under the now limited holding in *Pearce*, when a prosecutor moves for and a trial court grants a prayer for judgment following a successful appeal as to a separate conviction. As noted in *Smith* and *Goodwin*, there must be a reasonable likelihood that such a prayer for judgment is the result of actual vindictiveness in all cases for such

a presumption to arise. *See Smith,* 490 U.S. at 799, 104 L. Ed. 2d at 873; *Goodwin,* 457 U.S. at 381, 73 L. Ed. 2d at 85.

We find that imposition of a sentence on a conviction where a prayer for judgment continued was originally granted by the trial court in its discretion presents a situation more analogous to that of *Smith* than to *Pearce* and *Blackledge.* The factors frequently considered by the trial court in granting a prayer for judgment continued, such as the length and severity of sentences for other convictions entered at the same time, may be altered by a successful appeal of other convictions. In so concluding, we note that our courts have previously affirmed the imposition of a sentence from a prayer for judgment continued following an appeal of a separate conviction. In *State v. Graham,* 225 N.C. 217, 34 S.E.2d 146 (1945), our Supreme Court considered the imposition of a sentence on a conviction for possession of an intoxicating liquor following an appeal vacating a separate conviction for manufacturing an intoxicating liquor, when a prayer for judgment continued had been entered as to the possession charge. There the Court noted that "[i]t is familiar learning that a judge may suspend judgment over a criminal *in toto* until another term." *Graham,* 225 N.C. at 219, 34 S.E.2d at 147. *Graham* stated that entry of such a sentence was without error as:

> The defendant has been duly convicted of a violation of the criminal law of the State. This Court has found no error in the trial on the count charging unlawful possession of liquor for the purpose of sale. He may not complain that there has been some delay in exacting the penalty, for he cannot in this manner discharge the debt he owes society for the breach of its rules of good conduct.

*Graham,* 225 N.C. at 220, 34 S.E.2d at 147-48. Similarly, in *State v. Lea,* 156 N.C. App. 178, 576 S.E.2d 131 (2003), this Court found no prejudice in sentencing the defendant on assault convictions five years after a prayer for judgment continued was entered, when the defendant's original sentence for attempted second degree murder was vacated. *See Lea,* 156 N.C. App. at 178-80, 576 S.E.2d at 132-33. The *Lea* Court noted that by praying judgment when the defendant's active sentences were set aside, "the State sought to ensure that defendant suffered some consequences for his criminal conduct." *Lea,* 156 N.C. App. at 181, 576 S.E.2d at 133.

Thus, as there are sufficient justifications for entry of a sentence on a conviction where judgment was continued when a separate con-

viction is set aside, it cannot be said to be more likely than not that a prosecutor who moves for, or a judge who imposes the sentence is motivated by vindictiveness. We therefore decline to recognize a presumption of vindictiveness when a trial court sentences on a prayer for judgment following appeal of a separate conviction.

The United States Supreme Court has recognized that when a presumption of vindictiveness does not exist, actual vindictiveness may be found on the individual facts of the case. *See Smith*, 490 U.S. at 803, 104 L. Ed. 2d at 875; *Goodwin*, 457 U.S. at 384, 73 L. Ed. 2d at 87-88. The Supreme Court in *Goodwin* stated that a finding of no presumption "do[es] not foreclose the possibility that a defendant in an appropriate case might prove objectively that the prosecutor's . . . decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *Goodwin*, 457 U.S. at 384, 73 L. Ed. 2d at 87 (footnote omitted). The Court noted, however, that " 'only in a rare case would a defendant be able to overcome the presumptive validity of the prosecutor's actions through such a demonstration.' " *Id.* at 384, n19, 73 L. Ed. 2d at 87, n19. Our state courts have also recognized the difficulty of proof in such a showing. " 'A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.' " *State v. Lane*, 39 N.C. App. 33, 38, 249 S.E.2d 449, 452-53 (1978) (citations omitted).

We therefore examine the record for evidence that the decisions of the prosecutor and trial court, in moving for and entering sentence on the prayer for judgment for the robbery with a dangerous weapon, were improperly motivated by a desire to punish defendant for appeal of his conviction of first degree kidnapping and subsequent resentencing to a lesser sentence for second degree kidnapping.

In the State's Motion Praying Judgment, the stated ground for entry of sentence as to the second charge of robbery with a dangerous weapon was an alleged error in the record in defendant's prior appeal for conviction of kidnapping. The State contended in its motion that the reversal and remand for resentencing on the kidnapping charge was based on the faulty record compiled by the prosecutors. The motion stated:

The basis of the reversal of the First Degree Kidnapping charge was the failure of the indictment for First Degree Kidnapping to

STATE v. TRUSELL

[170 N.C. App. 33 (2005)]

state that the victim was not released in a safe place. In fact, the indictment used at trial did state this, but due to the prosecutors failure to adequately review the record of appeal, the indictment that went up on appeal—which had been superseded by the indictment used at trial—did not have the required wording. . . .

At the hearing on the matter, the prosecutor stated that, by his mistake, the appellate record used contained the original indictment for kidnapping, rather than the superseding indictment used by the trial court to properly instruct the jury as to first degree kidnapping. The prosecutor stated that as a result, the State prayed judgment as to defendant's conviction for robbery with a dangerous weapon to "recover the time that was lost due to the state's mistake on kidnapping."

The trial court stated at the hearing that he recalled the case in question, and that a superseding indictment was obtained before trial which properly alleged the elements of first degree kidnapping. The trial court also stated that the appellate court was not privy to the proper record in rendering its decision. After inquiry as to the difference between the sentence defendant originally received prior to the appeal and the sentence received after remand for resentencing as to the kidnapping charge, the trial court sentenced defendant on the robbery with a dangerous weapon charge to a term of sixty-nine to ninety-two months, to be served at the conclusion of his other sentences. This sentence effectively equaled the difference in time between defendant's original sentence and his subsequent reduced sentence after appeal. The trial court specifically noted that one reason he had "PJC'd th[e] armed robbery conviction was I felt like he got enough time at that time[.]"

In the sentencing order, the trial court further confirmed that the reversal of the prior appeal formed the basis for the resentencing, noting:

10. That the defendant is now facing a sentence of 168 months minimum and 218 months maximum. Again, noting that at the original trial the defendant had a sentence of 237 months minimum and 312 months maximum.

11. That had the proper bill of indictment 97CRS197A been sent up on appeal, that there is a very good case that this matter would have never been sent back for resentencing, and the defendant would be facing that sentence given in May of 1997 of 237 months minimum and 312months [sic] maximum.

12. That the court vividly remembers this case, being the trial Judge, and has now reviewed all the evidence. And the Court will put on the record that the undersigned Judge in May of 1997 entered a prayer for judgment continued on the armed robbery charge in 97CRS198 because the court in its discretion and in sentencing felt that 237 months minimum and 312 months maximum was an appropriate judgment.

Although the record indicates some spurious motivation on the part of the prosecutor to correct his own error in sending the wrong appellate record for review by this Court, the trial court articulated a legitimate reason for sentencing defendant on the robbery with a dangerous weapon charge. The trial court stated at both the hearing and in the written order that the prayer for judgment continued was entered because the trial court, in its discretion, believed at the original sentencing hearing that defendant's sentence was appropriate without the additional time from the robbery charge. However, due to the remand for resentencing for second degree rather than first degree kidnapping, which resulted in a lesser sentence for that offense, the trial court reconsidered the appropriateness of the prayer for judgment continued as to the robbery with a dangerous weapon conviction and, it its discretion, sentenced defendant on that conviction. As the record reveals some legitimate reason for the entry of judgment, we therefore find defendant failed to demonstrate actual vindictiveness.

As a presumption of vindictiveness in sentencing on a prayer for judgment following defendant's successful appeal of another conviction does not exist, and as defendant fails to surmount the high bar to demonstrate actual vindictiveness, no due process violation occurred in defendant's sentencing for robbery with a dangerous weapon.

For the reasons stated herein, we find no error in the amendment of the charge of robbery with a dangerous weapon, nor in defendant's sentence as to that charge.

Affirmed.

Judges BRYANT and JACKSON concur.