STATE OF NORTH CAROLINA v. TOBIAS JOHNSON

No. COA10-519

(Filed 7 December 2010)

**1. Robbery— sufficiency of evidence—intent to commit a taking**

The trial court erred in denying defendant's motion to dismiss the charge of attempted robbery with a firearm because there was insufficient evidence from which an intent to commit a taking could be inferred.

**2. Burglary and Unlawful Breaking or Entering— sufficiency of evidence—insufficient evidence of predicate felony**

The trial court erred in denying defendant's motion to dismiss the charge of felony entering based upon insufficient evidence.

The predicate felony for defendant's conviction of felony entering was attempted robbery and the trial court erred in denying defendant's motion to dismiss the charge of attempted robbery with a firearm based on insufficient evidence.

**3. Criminal Law— felony entering—discharging firearm into an occupied dwelling—not mutually exclusive offenses— occurred in succession**

The trial court did not err in entering judgments for both felony entering and discharging a firearm into an occupied dwelling inflicting serious bodily injury where the two offenses occurred in succession and were not mutually exclusive.

Appeal by defendant from judgments entered 26 March 2009 by Judge Quentin T. Sumner in Washington County Superior Court. Heard in the Court of Appeals 3 November 2010.

*Attorney General Roy Cooper, by Assistant Attorney General David D. Lennon, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Kristen L. Todd, for defendant-appellant.*

STEELMAN, Judge.

Where there was insufficient evidence of an attempt by defendant to take personal property, the trial court erred in denying defendant's motion to dismiss the charge of attempted robbery with a firearm. In the absence of a predicate felony, the trial court erred in denying defendant's motion to dismiss the charge of felony entering. Where defendant and Lamont, acting in concert, fired through Ruffin's front door, defendant was properly convicted of discharging a firearm into an occupied dwelling inflicting serious bodily injury.

I. Factual and Procedural History

On 14 January 2008, Johnny Ruffin ("Ruffin") was at his home in Plymouth, North Carolina with his uncle. At approximately 5:45 p.m. Ruffin was gathering trash to take outside when he heard someone at the door. Ruffin opened the door, and Tobias Johnson ("defendant") was standing directly in front of the door on the screened-in porch and Corey Lamont ("Lamont") was standing to the blind side of the door. Lamont told Ruffin that he and defendant were going to kill Ruffin, and Lamont inserted his foot into the door, preventing Ruffin

from shutting it. Ruffin's front door opened into the house, and as the struggle over the door continued Lamont inserted his gun through the opening. At some point Lamont removed the gun from the door opening, and someone fired shots through the door. Ruffin was shot twice, once in his left shoulder and once in his left thumb. At this point Ruffin yelled to his uncle to "get the gun." Defendant and Lamont fled.

After defendant and Lamont fled, Ruffin shut the door, locked it, called his brother, and asked him to call law enforcement. An ambulance and police officers arrived approximately fifteen minutes later. Ruffin was taken to Washington County Hospital, and was subsequently airlifted to Pitt Memorial Hospital in Greenville. The bullet that entered Ruffin's shoulder remains there, but the bullet that entered his hand worked its way out about two months later. Corporal Mickey Robbins ("Robbins") responded to Ruffin's residence, and found one .380 shell casing on the porch to the left of the door, when facing the house. Robbins also observed a bullet hole through Ruffin's front door approximately six inches above the deadbolt lock.

Ruffin recognized defendant and Lamont because he had seen them four days prior to the shooting. Defendant and Lamont had walked by Ruffin's home, and asked Ruffin who he was and introduced themselves. Defendant asked whether Ruffin knew defendant's father, and Ruffin stated that he did. After the shooting, Ruffin told police that he could not identify his attackers by name, but gave the police the names of their parents. Police used this information to identify defendant and Lamont, and prepared two photo lineups from which Ruffin identified defendant and Lamont. Ruffin indicated that the attacker carrying the gun was the shorter of the two men. One of the investigating officers identified Lamont as being shorter than defendant.

On 25 February 2008, defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury, attempted robbery with a dangerous weapon, discharge of a weapon into an occupied dwelling inflicting serious bodily injury, and first-degree burglary. On 26 March 2009, a jury found defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury, attempted robbery with a firearm, discharging a firearm into an occupied dwelling inflicting serious bodily injury, and felony entering. The trial court found defendant to be a prior record level III, and sentenced him to two terms of 116 to 149 months imprisonment for assault with a deadly weapon with intent to kill inflicting serious

injury and discharging a firearm into an occupied dwelling inflicting serious injury, one term of 103 to 133 months imprisonment for attempted robbery with a firearm, and one term of 10 to 12 months imprisonment for felony entering. Each of these sentences were to be served consecutively.

On 22 September 2009, this Court granted defendant's petition for writ of *certiorari* to review these judgments.

## II. Motion to Dismiss Attempted Robbery with a Firearm Charge

[1] In his second argument, defendant contends the trial court erred in denying his motion to dismiss the charge of attempted robbery with a firearm based upon the sufficiency of the evidence. We agree.

### A. Standard of Review

Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of. a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.

If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed. This is true even though the suspicion so aroused by the evidence is strong.

. . . .

The test of sufficiency of the evidence to withstand the motion is the same whether the evidence is direct, circumstantial or both.

*State v. Powell*, 299 N.C. 95, 98-99, 261 S.E.2d 114, 117 (1980) (internal citations omitted).

### B. Analysis

The essential elements of the crime of attempted robbery with a dangerous weapon are: (1) the unlawful *attempted taking* of personal property from another; (2) the possession, use or threatened use of a firearm or other dangerous weapon, implement or means; and (3) danger or threat to the life of the victim.

*State v. Trusell*, 170 N.C. App. 33, 37, 612 S.E.2d 195, 198 (2005) (quotation omitted), *disc. review denied*, 359 N.C. 856, 620 S.E.2d 196

(2005). The State does not contend that any statement was made or overt act undertaken on the night in question from which intent to commit a taking could be inferred; rather, the State contends that when defendant and Lamont came by Ruffin's residence four days earlier they were there to "case the joint." While we recognize evidence can be direct or circumstantial, this does not rise to the level of sufficient circumstantial evidence, but merely raises a suspicion that defendant was attempting a taking.

There is no evidence that when defendant and Lamont spoke with Ruffin four days prior to the shooting they had any opportunity to observe the layout or contents of Ruffin's home, things they certainly would have done if they were "casing the joint." The fact that there was no ill will between defendant and Ruffin is also not significant. The lack of evidence of defendant's motive for the shooting does not enable this Court to infer defendant was attempting a robbery.

In *State v. McDowell*, the North Carolina Supreme Court vacated the defendant's conviction for attempted armed robbery due to the insufficiency of the evidence. 329 N.C. 363, 389, 407 S.E.2d 200, 214 (1991). In *McDowell*, there was some evidence that the defendant had stated that " '[h]e was going to get him some money even if he had to burn somebody.' " *Id.* at 389, 612 S.E.2d at 215. The defendant then shot and killed a woman while she was sitting in her car, but left the scene of the crime without taking her purse located on the seat next to her. *Id.* at 389-90, 612 S.E.2d at 215. There is even less evidence of an attempted robbery in the instant case than there was in *McDowell*. In *McDowell*, there was a prior statement by the defendant indicating a motive of robbery. However, in the instant case there were no statements whatsoever, made by defendant or Lamont, indicating an intent to steal anything from Ruffin.

The evidence in the instant case was "sufficient only to raise a suspicion" that defendant was attempting to rob Ruffin. *Powell*, 299 N.C. at 98, 261 S.E.2d at 117. The trial court erred in denying defendant's motion to dismiss the charge of attempted robbery with a firearm. The judgment on that charge is ordered vacated by the trial court.

### III. Motion to Dismiss Charge of Felony Entering

[2] In his third argument, defendant contends the trial court erred in denying his motion to dismiss the charge of felony entering based upon the sufficiency of the evidence. We agree.

"The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein. The breaking or entering must be without the consent of the owner or occupant." *State v. Williams*, 330 N.C. 579, 585, 411 S.E.2d 814, 818 (1992) (citations omitted). The predicate felony for defendant's conviction of felony entering was attempted robbery. As discussed above the trial court erred in denying defendant's motion to dismiss the charge of attempted robbery with a firearm. Therefore, the trial court also erred in denying defendant's motion to dismiss the charge of felony entering.

However, the jury found defendant guilty of felony entering, finding that the State had proven all of the elements of that offense. "Misdemeanor breaking or entering, G.S. 14-54(b), is a lesser included offense of felonious breaking or entering and requires only proof of wrongful breaking or entry into any building." *State v. O'Neal*, 77 N.C. App. 600, 606, 335 S.E.2d 920, 924 (1985) (citations omitted). Since our holding above only negates the element of the defendant's intent to commit attempted robbery, the defendant was guilty of misdemeanor entry based upon the jury's verdict. We direct the trial court to arrest judgment on the charge of felony entering and remand for entry of judgment on misdemeanor entry. *State v. Silas*, 168 N.C. App. 627, 635, 609 S.E.2d 400, 406 (2005) (citing *State v. Moses*, 154 N.C. App. 332, 572 S.E.2d 223 (2002)), *modified and aff'd*, 360 N.C. 377, 627 S.E.2d 604 (2006).

### IV. Mutually Exclusive Offenses

**[3]** In his first argument, defendant contends the trial court erred in entering judgments for both felony entering and discharging a firearm into an occupied dwelling inflicting serious bodily injury because the two offenses were mutually exclusive. We disagree.

While we have vacated the judgment for felony entering, we are remanding to the trial court for entry of judgment against defendant for misdemeanor entering. Accordingly, this argument is not moot, and we will address it.

Defendant contends that judgment should not have been entered against him for discharging a firearm *into* Ruffin's dwelling, because defendant and Lamont had already entered the dwelling by inserting the gun through the crack in Ruffin's front door when the shots in question were fired. We hold that this argument is not supported by the evidence. Ruffin testified "[Lamont] put the gun inside [the door],

and then he took it out, and then they [defendant and Lamont] shot through the door." Ruffin's testimony makes it clear that defendant first entered Ruffin's home when Lamont inserted his hand into the crack in the door, and then Lamont discharged a firearm into an occupied dwelling inflicting serious bodily injury. These offenses were submitted to the jury as to defendant based upon the theory of acting in concert. Ruffin's testimony was corroborated by Robbins' testimony that there was a bullet hole through the front door approximately six inches above the deadbolt lock. The offenses of entering Ruffin's dwelling and discharging a firearm were not mutually exclusive offenses, but rather offenses that occurred in succession. As the State's brief points out "[t]he mere fact that the shooter entered Mr. Ruffin's house at one point does not mean that the shooter was at all times thereafter inside Mr. Ruffin's house."

For these same reasons, the instant case is distinguishable from *State v. Surcey*, 139 N.C. App. 432, 533 S.E.2d 479 (2000), which defendant cites for the proposition that the offenses of first-degree burglary and discharging a firearm into an occupied dwelling are mutually exclusive. In *Surcey*, "[t]he evidence [was] uncontradicted that at the time defendant fired the shot at [the victim], he was standing on [the victim's] porch outside the residence and was holding the shotgun *inside* [the victim's] living room window." *Id.* at 436, 533 S.E.2d at 482 (emphasis added). In the instant case, defendant and Lamont, acting in concert, removed the gun from the interior of Ruffin's residence before firing, and fired the weapon through Ruffin's front door; therefore, based on these facts the two offenses in question were not mutually exclusive but instead occurred in succession.

Defendant further argues that these offenses are mutually exclusive because defendant and Lamont entered Ruffin's dwelling as they came on Ruffin's screened-in porch, and therefore they could not have fired *into* Ruffin's home. Defendant cites *State v. Watts*, for the proposition that entering through an unlocked door onto the porch of a house is sufficient to show a breaking and entering. 76 N.C. App. 656, 659, 334 S.E.2d 68, 70 (1985), *disc. review denied*, 315 N.C. 596, 341 S.E.2d 37 (1986). While this is an accurate statement of the holding in *Watts*, it is not controlling in a case where a completely different criminal charge is involved.

*In State v. Cockerham*, the defendant was convicted of discharging a firearm into occupied property when the defendant fired shots from his apartment through a common wall into another apartment.

155 N.C. App. 729, 574 S.E.2d 694 (2003), *disc. review denied*, 357 N.C. 166, 580 S.E.2d 702 (2003). Defendant argued that since he was entirely inside his apartment when he fired the shots he could not have fired into an occupied dwelling. *Id.* In upholding defendant's conviction, this Court noted that "our Supreme Court has stated that the 'protection of the occupants of the building was the primary concern and objective of the General Assembly when it enacted G.S. 14-34.1,' " the statute defining the offense of discharging a weapon into an occupied dwelling. *Id.* at 735, 574 S.E.2d at 698 (citing *State v. Williams*, 284 N.C. 67, 72, 199 S.E.2d 409, 412 (1973)). "A person who fires a gun through a common wall of an apartment is engaged in the same mischief as a person shooting into the building from the outside." *Cockerham*, 155 N.C. App. at 735, 574 S.E.2d at 698. This rationale is equally applicable to the instant case. Lamont fired through the door into Ruffin's residence. Whether he was standing on the porch or in the yard, his actions created the same sort of danger to the occupants of Ruffin's dwelling. Further, the evidence shows that Ruffin considered the interior of his home a separate and more protected area than his screened-in porch. There was a deadbolt lock on the door between Ruffin's porch and his home. We hold that defendant and Lamont were not in Ruffin's dwelling when standing on his screened-in porch for purposes of the offense of discharging a firearm into an occupied dwelling.

The trial court committed no error relating to defendant's conviction for discharging a firearm into an occupied dwelling inflicting serious bodily injury.

NO ERROR in part, REVERSED and VACATED in part, REMANDED in part.

Judges STEPHENS and HUNTER, JR. concur.